| STATE OF NORTH CAROLINA | | File No. | |
|---|---|---|---|
| Durham County | FILED | In The General Court Of Justice ☐ District ☒ Superior Court Division | |

| Name Of Plaintiff |
|---|
| Michael Hunt |
| Address |
| |
| City, State, Zip |
| |

2018 APR 24 A 9:57
DURHAM CO., C.S.C.
BY

**CIVIL SUMMONS**
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

**VERSUS**

G.S. 1A-1, Rules 3 and 4

| Name Of Defendant(s) | Date Original Summons Issued |
|---|---|
| Debt Assistance Network, LLC | |
| | Date(s) Subsequent Summons(es) Issued |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Debt Assistance Network, LLC | |
| c/o Nevada Corporate Headquarters, Inc., Registered Agent | |
| P.O. Box 27740 | |
| Las Vegas NV 89126 | |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued APR 2 4 2018 | Time 9:57 ☒ AM ☐ PM |
|---|---|---|
| Paige C. Kurtz | Signature Monica M. Richardson | |
| Kurtz Law, PLLC | | |
| 715 Kimbrough St. | | |
| Raleigh NC 27608 | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE) | Date Of Endorsement | Time ☐ AM ☐ PM |
|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 6/16
© 2016 Administrative Office of the Courts

EXHIBIT A

**FILED**

STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE
2018 APR 24   SUPERIOR COURT DIVISION
COUNTY OF DURHAM     CVS _____

DURHAM CO., C.S.C.
BY _____

| | |
|---|---|
| MICHAEL HUNT, </br> Plaintiff, </br></br> v. </br></br> DEBT ASSISTANCE NETWORK, LLC, </br> Defendant. | )</br>)</br>)</br>)</br>)    **COMPLAINT** </br>)</br>) |

NOW COMES the Plaintiff, Michael Hunt, complaining of the Defendant, alleging and stating the following:

1. Plaintiff Michael Hunt is a citizen and resident of Durham County and is are neither an infant nor incompetent.

2. Upon information and belief, Defendant Debt Assistance Network, LLC ("DAN") is a limited liability company organized and existing under the laws of the State of Nevada with its principal place of business in Las Vegas, Nevada.

3. Jurisdiction and venue of this matter are proper in this Court pursuant to N.C.G.S. §1-75.4, §1-75.6, and §1-80.

4. The amount of this controversy is in excess of Ten Thousand and 00/100 dollars ($10,000.00).

**FIRST CLAIM FOR RELIEF**
**BREACH OF CONTRACT**

5. The allegations contained in paragraphs 1 through 4 are hereby realleged and incorporated herein by reference.

6. On or about April 13, 2017, Plaintiff and Defendant entered into a contract entitled "Consumer Tender of Offer and Debt Assumption Agreement.

7. Defendant DAN advertised itself as being in the business of providing consumers with debt resolutions and debt assistance.

8. To facilitate DAN's work, Plaintiff turned over account information to DAN for six accounts for which Plaintiff had balances on which Plaintiff was making payments.

1

9. Plaintiff executed a limited power of attorney with DAN so that DAN could communicate directly with creditors regarding Plaintiff's accounts and to allow DAN to act on Plaintiff's behalf with respect to the accounts.

10. At the time that Plaintiff entered into the contract with DAN, Plaintiff was not in default on any of his accounts and owed approximately $53,028.50.

11. Plaintiff sought DAN's assistance solely for the purposes of consolidating payments and hopefully reducing the payments to creditors over time as Plaintiff did not dispute the debts of his creditors.

12. Pursuant to the contract, Plaintiff was required to make a down payment of $800.00 followed by monthly payments of $649.20.

13. Dan required Plaintiff to advise his creditors to mail all statements and communications to DAN's address at 4730 S. Fort Apache Rd., Ste. 300, Las Vegas, Nevada 89147.

14. Plaintiff entered into a separate "Account Agreement Disclosure Statement" with Secure Account Service for the processing of ACH transactions from Plaintiff's account in the monthly payment amount.

15. Pursuant to the contract, DAN agreed to make "contractual offers" on Plaintiff's accounts to modify the agreements with the creditors and, if accepted, make payments directly to the creditors.

16. In the contract, DAN made Plaintiff a "100% Guarantee" that if a modified agreement was not accepted by the creditor within 90 days, DAN would refund 100% of the monies paid towards that account.

17. DAN's contract stated that it's goal was to "render claims uncollectable."

18. Upon information and belief, after entering into the contract with Plaintiff, Defendant sent checks for $25.00 to creditors with language on the back of the check purporting to amend all the material terms of each of the creditor's contracts.

19. Upon information and belief, neither Plaintiff nor Defendant had notified any of Plaintiff's

creditors that any of the debts were disputed.

20. Upon information and belief, Defendant forwarded such checks to lockboxes or other automated processing centers for immediate deposit.

21. DAN's contract also stated that should a client be sued due on a debt, DAN would provide a local attorney for representation and defense.

22. Pursuant to its contract, Defendant directed Plaintiff not to discuss his accounts with his creditors as it would interfere with Defendant's process.

23. DAN maintained an online portal at which Plaintiff could access information regarding the status of each of its accounts placed with DAN.

24. Plaintiff checked his account through the online portal on multiple occasions and on each such occasion, the accounts were all listed as "new terms have been accepted."

25. Based on this representation and no conflicting information from DAN, Plaintiff relied on this information in continuing to make monthly payments to DAN to pay DAN's administrative expenses and payments to Plaintiff's creditors.

26. Plaintiff was informed and believed that part of the money being paid to DAN was subsequently being paid to Plaintiff's creditors under the "new terms."

27. On December 5, 2017, American Express Bank FSB filed a lawsuit against Plaintiff for breach of contract. Plaintiff was served with the lawsuit on December 11, 2017 by the Durham County Sheriff.

28. Plaintiff immediately forwarded the lawsuit to DAN, who responded by asking why Plaintiff had helped the creditor serve him.

29. DAN did not thereafter contact Plaintiff regarding the lawsuit, nor did it provide Plaintiff with legal counsel regarding the lawsuit.

30. When Plaintiff did not hear from DAN regarding the lawsuit and got no response to his inquiries, Plaintiff obtained current counsel to represent him in the lawsuit filed by American Express as he was concerned about the deadline to respond to the lawsuit.

3

31. Since the filing of the lawsuit, Plaintiff has contacted all his creditors or accessed the creditors' information through online portals and discovered that all the accounts turned over to DAN are now in default.

32. Before contracting with DAN, Plaintiffs credit score was in the 700s. Plaintiff's credit score is now in the 500s.

33. Some of Plaintiff's creditors have charged off the accounts and may have forwarded the accounts to collection agencies or attorneys.

34. As of January 2018, after the filing of the lawsuit by American Express, Plaintiff's account with DAN still lists all accounts as being under "new terms."

35. Plaintiff is informed and believes that Defendant DAN made few if any payments to Plaintiff's creditors.

36. DAN has breached the contract by failing to provide Plaintiff with legal counsel for the American Express lawsuit.

37. DAN has breached the contract by failing to reach new agreements with Plaintiff's creditors but representing to Plaintiff that it had done so.

38. DAN has breached the contract by failing to refund payments to Plaintiff as DAN knew or should have known that no new contracts had been entered with the creditors and Plaintiff.

39. As a result of DAN's actions, Plaintiff has suffered damages in excess of Ten Thousand and 00/100 dollars ($10,000.00).

## SECOND CLAIM FOR RELIEF
## FRAUD

40. The allegations contained in paragraphs 1 through 39 are hereby realleged and incorporated herein by reference.

41. Defendant entered into a contract with Plaintiff in which Defendant agreed to provide certain services to consolidate and manage Plaintiff's debts.

42. Defendant required that all of Plaintiff's creditors use Defendant's address for the purpose of

4

communicating regarding Plaintiff's accounts.

43. Once Plaintiff entered into the contract with Defendant, Plaintiff did not receive any communications from its creditors other than the lawsuit filed by American Express.

44. Upon information and belief, Defendant never had copies of the original contracts of Plaintiff and its creditors and did not request copies of the contracts from Plaintiff.

45. By diverting all communications from Plaintiff's creditors and directing Plaintiff not to discuss his accounts with creditors, Defendant was able to control the information which Plaintiff had regarding its creditors.

46. Through the online portal offered by Defendant, Defendant represented to Plaintiff from approximately June 2017 through the present that for all of Plaintiff's creditors "new terms had been accepted."

47. The representation to Plaintiff was false and was intended to conceal the true facts as known by Defendant.

48. The representations made by Defendant were reasonably calculated to deceive Plaintiff for the purpose of collecting funds from Plaintiff for Defendant.

49. The representations to Plaintiff were made with the intent to deceive Plaintiff into believing that his creditors accepted the lower payments and modifications of terms.

50. Such representations were made with the intent that Plaintiff continue to make payments to Defendant for its "services."

51. The representations made by Defendant did in fact deceive Plaintiff as believe the information as represented by DAN that all its creditors were being paid and Plaintiff took no independent action with respect to his creditors.

52. The representations did in fact deceive Plaintiff as Plaintiff had no reason to believe its was in severe default on his accounts with his creditors and had been sued by at least one creditor.

53. The representations by Defendant have caused damage to Plaintiff as a lawsuit has been filed by creditor American Express against Plaintiff.

54. The representations by Defendant have caused damage to Plaintiff as it appears that all of Plaintiff's creditors have assessed or will assess additional fees and charges on Plaintiff's account that would not have been incurred but for Defendant's actions.

55. The representations by Defendant have caused damage to Plaintiff as Plaintiff's credit score has plummeted because of Defendant's actions in allowing all of Plaintiff's accounts to go into default.

56. Defendant took such actions with the intent to commit fraud or with malice and such actions were willful or wanton.

57. Defendant's actions are aggravated by the fact that the actions were taken with the intent to make money from Plaintiff and to hide and conceal information from Plaintiff to perpetuate the fraud.

58. As a result of such willful and intentional conduct by Defendant, Plaintiff is entitled to punitive damages, pursuant to N. C. Gen. Stat. §1D-1, et seq.

59. Plaintiff has been damaged by the actions of Defendant in amount to be determined at trial, that exceeds Ten Thousand and 00/100 dollars ($10,000.00).

### THIRD CLAIM FOR RELIEF
### NEGLIGENT MISREPRESENTATION

60. The allegations contained in paragraphs 1 through 59 are hereby realleged and incorporated herein by reference.

61. Upon information and belief, Defendant never had copies of the original contracts of Plaintiff and its creditors and did not request copies of the contracts from Plaintiff.

62. By diverting all communications from Plaintiff's creditors and directing Plaintiff not to discuss his accounts with creditors, Defendant was able to control the information which Plaintiff had regarding its creditors.

63. Through the online portal offered by Defendant, Defendant represented to Plaintiff from approximately June 2017 through the present that for all of Plaintiff's creditors "new terms had been accepted."

6

Plaintiff's creditors have assessed or will assess additional fees and charges on Plaintiff's account that would not have been incurred but for Defendant's actions.

76. The representations by Defendant have caused damage to Plaintiff as Plaintiff's credit score has plummeted because of Defendant's actions in allowing all of Plaintiff's accounts to go into default. ✓

77. Defendant took such actions with the intent to commit fraud or with malice and such actions were willful or wanton.

78. Defendant's actions are aggravated by the fact that the actions were taken with the intent to make money from Plaintiff and to hide and conceal information from Plaintiff to perpetuate the fraud.

79. As a result of such willful and intentional conduct by Defendant, Plaintiff is entitled to punitive damages, pursuant to N. C. Gen. Stat. §1D-1, et seq.

80. Plaintiff has been damaged by the actions of Defendant in amount to be determined at trial, that exceeds Ten Thousand and 00/100 dollars ($10,000.00).

### FOURTH CLAIM FOR RELIEF
### UNFAIR AND DECEPTIVE TRADE PRACTICES

81. The allegations contained in paragraphs 1 through 81 are hereby realleged and incorporated herein by reference.

82. At all relevant times Defendant was engaged in commerce in the State of North Carolina.

83. Defendants' actions in representing to Plaintiff that all its creditors had accepted new payment terms, that his accounts were not in default and by sequestering the information regarding the status of Plaintiff's accounts from Plaintiff was done solely to defraud Plaintiff and to induce Plaintiff in to paying Defendant monies for actions that could not be achieved.

84. By representing that Defendant had accomplished all its goals, Defendant mislead Plaintiff and attempted to put itself in a position that it could retain monies paid by Plaintiff instead of refunding such monies per the terms of the contract.

85. Such actions by Defendant involved unfair and deceptive acts and practices of Defendant.

64. As Defendant did not know the terms of the contract, Defendant could not properly seek to amend such contracts or create new terms for the contracts.
65. Defendant attempted to modify the contracts of Plaintiff's creditors unilaterally or in violation of the existing contract terms of Plaintiff's creditors.
66. Defendant knew or should have known that the use of checks sent to lockboxes or other payment processing centers for creditor payments was not a valid method to modify the terms of the contracts between Plaintiff and his creditors.
67. After sending checks to Plaintiff's creditors, Defendant represented to Plaintiff that all of Plaintiff's creditors had accepted new payment terms.
68. The statements and representations of Defendant were false.
69. Defendant had no reasonable basis for believing the statements to be true knowing that Defendant could not modify Plaintiff's creditors contracts through the checks.
70. The statements regarding the new contract terms was made to Plaintiff with the intent that Plaintiff rely on the statements in continuing to allow Defendant to "manage" Plaintiff's debts and to continue to pay monthly payments to Defendant.
71. Plaintiff believed the representations of Defendant in continuing to make monthly payments to Defendant.
72. Plaintiff reasonably relied on the representations of Defendant as Plaintiff repeatedly checked the online portal to remain aware of the status of the accounts and to confirm that he was not in default of his obligations.
73. As Defendant directed that all communications from creditors be directed to Defendant, Plaintiff was reasonable in relying on the representations of Defendant as Defendant should have had the most current information.
74. The representations by Defendant have caused damage to Plaintiff as a lawsuit has been filed by creditor American Express against Plaintiff.
75. The representations by Defendant have caused damage to Plaintiff as it appears that all of

7

86. Defendant's actions, false assurances, and false representations and/or negligent representations were in or affecting commerce and constitute unfair and deceptive trade practices, which are proscribed by Chapter 75 of the North Carolina General Statutes.

87. The practices and actions of Defendant referenced above were unethical and deceived Plaintiff in a manner that impacted Plaintiff's relationships with its creditors, caused Plaintiff to incur additional fees and charges from its creditors, severely impacted Plaintiff's credit score and caused Plaintiff to be sued for past due debts.

88. The false or misleading representations by Defendant had the tendency and/or capacity to mislead or deceive and did in fact mislead and deceive Plaintiff.

89. The acts of the Defendant constitute unfair and deceptive trade practice and are in violation of N.C. Gen Stat. §75-1.1.

90. Defendant's unfair and deceptive trade practices have damaged Plaintiff in excess of Ten Thousand and 00/100 dollars ($10,000.00), and Plaintiff is entitled to have his damages trebled, pursuant to N.C. Gen. Stat. §75-16 and to recover the attorney's fees incurred in this action, pursuant to N.C. Gen. Stat. §75-16.1.

This the 18th day of April 2018.

Paige C. Kurtz, State Bar No. 26549
Kurtz Law, PLLC
Attorney for Plaintiff
715 Kimbrough St.
Raleigh, NC 27608
Telephone: (919) 336-4240
Facsimile: (919) 336-4153

9

## AFFIDAVIT OF CLAIM

IN THE STATE OF NORTH CAROLINA

COUNTY OF Orange

The undersigned, Michael Hunt, being duly sworn, states that he is the Plaintiff, that I have read the Complaint, know its contents and have personal knowledge regarding the matters set forth therein and that the statements set forth in the Complaint are true and correct to the best of my knowledge and belief. No part thereof of the balance claimed has been paid or satisfied, and that there are no offsets thereto to the knowledge or belief of the deponent.

This the 16 day of April 2018.

_____
Michael Hunt

Sworn to an subscribed before me this the

April day of 16, 2018.

_____
NOTARY PUBLIC
My Commission expires: August 29, 2018