UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:18-cv-644

| | |
|---|---|
| MICHAEL HUNT. | ) |
| | ) **MEMORANDUM OF LAW IN** |
| Plaintiff, | ) **SUPPORT OF DEFENDANT'S** |
| v. | ) **MOTION TO DISMISS AND** |
| | ) **COMPEL ARBITRATION OR, IN** |
| DEBT ASSISTANCE NETWORK, | ) **THE ALTERNATIVE, TO STAY** |
| LLC, | ) **PROCEEDING PENDING** |
| | ) **ARBITRATION** |
| Defendant. | ) |
| _____ | ) |

Defendant Debt Assistance Network, LLC ("DAN"), by and through its undersigned counsel and pursuant to Rules 12(b)(1), 12(b)(3), and/or 12(b)(6) of the Federal Rules of Civil Procedure, the Federal Arbitration Act ("FAA"), and Local Civil Rule 7.2(a), respectfully submits this memorandum of law in support of its motion to dismiss and compel arbitration or, in the alternative, to stay proceeding pending arbitration.

## NATURE OF MATTER BEFORE THE COURT

DAN moves to dismiss and compel arbitration or, in the alternative, to stay the proceeding pending arbitration, in order to enforce a mandatory arbitration provision agreed to by the plaintiff. In particular, the plaintiff executed a contract with DAN that expressly incorporated an agreement providing, in pertinent part, that "any dispute or claim arising out of this Agreement or otherwise," bearing a relation to the services provided therein, "shall be resolved through binding arbitration with the American Arbitration Association in Phoenix, Arizona and the decision of the arbitrator shall be final and enforceable by a court of competent jurisdiction." (Account Agreement and Disclosure

Statement, attached to the Declaration of Lee Sands as Exhibit B, ¶ 6 (arbitration provision); Consumer Tender of Offer and Debt Assumption Agreement, attached to the Declaration of Lee Sands as Exhibit A, at 3 (stating that the Account Agreement and Disclosure Statement "is included as part of this AGREEMENT").) As provided below, this broad language, in conjunction with federal policy strongly favoring arbitration, dictates that this action should be dismissed and that any dispute should be referred to arbitration.

## STATEMENT OF FACTS

On April 13, 2017, the plaintiff executed a contract entitled "Consumer Tender of Offer and Debt Assumption Agreement" (hereinafter "Debt Assumption Agreement"), wherein the plaintiff agreed to enroll a portion of his debts into DAN's debt assumption program. (Ex. A to the Declaration of Lee Sands at 4; *see also* Compl., DE 4, ¶ 6[1] (providing that the plaintiff "entered into a contract entitled 'Consumer Tender of Offer and Debt Assumption Agreement'").) The Debt Assumption Agreement provided, in part, that a corresponding ACH agreement was expressly included as a part of the underlying agreement. (Ex. A to the Declaration of Lee Sands at 3 ("All sums paid according to the terms shown in the ACH AGREEMENT, <u>which is included as part of this AGREEMENT</u>")) (emphasis added). The Debt Assumption Agreement also referred to

---

[1] Ex. A to the Declaration of Lee Sands represents a true and accurate copy of the Debt Assumption Agreement referred to in paragraph 6 of the plaintiff's complaint. (Declaration of Lee Sands ¶ 3.)

the corresponding ACH agreement as dictating the period of months for which DAN's services would be provided to the plaintiff. (*Id.* at 3-4.)

On the same day, the plaintiff executed the corresponding ACH agreement, entitled "Account Agreement and Disclosure Statement." (Ex. B to the Declaration of Lee Sands; *see also* Compl., DE 4, ¶ 14[2] (providing that the plaintiff "entered into a separate 'Account Agreement [and] Disclosure Statement' with Secure Account Service for the processing of ACH transactions from Plaintiff's account in the monthly payment amount").) DAN regularly requires, and in the case of the plaintiff, did require, that individuals retaining its debt assumption services execute both the Debt Assumption Agreement and the Account Agreement and Disclosure Statement. (Declaration of Lee Sands ¶ 5.) The Account Agreement and Disclosure Statement is the only ACH agreement that individuals retaining DAN's services execute, and is the only ACH agreement that the plaintiff executed and was asked to execute when he retained DAN's services. (Declaration of Lee Sands ¶ 8.) DAN would not have provided its services to the plaintiff if he did not execute both the Debt Assumption Agreement and the Account Agreement and Disclosure Statement. (*Id.* ¶ 6.) The Account Agreement and Disclosure Statement contained an arbitration provision (hereinafter "Arbitration Agreement"), providing, in pertinent part:

> [The plaintiff] agrees that <u>any dispute</u> or claim <u>arising out of this Agreement or otherwise</u>, related to SAS's services to [the plaintiff], <u>shall be resolved through binding arbitration</u> with the American Arbitration Association in

---

[2] Ex. B to the Declaration of Lee Sands represents a true and accurate copy of the Account Agreement and Disclosure Statement referred to in paragraph 14 of the plaintiff's complaint. (Declaration of Lee Sands ¶ 4.)

Phoenix, Arizona and the decision of the arbitrator shall be final and enforceable by a court of competent jurisdiction.

(Ex. B to the Declaration of Lee Sands, ¶ 6) (emphasis added).

On April 24, 2018, the plaintiff filed an action against DAN in Durham County Superior Court, alleging claims arising from the debt assumption services agreed to between the plaintiff and DAN. (Compl., DE 4.) The action implicated and related to the sums paid through the services described in the Account Agreement and Disclosure Statement. (*Id.* ¶ 12.) On July 20, 2018, DAN filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

DAN has moved to dismiss this action and compel arbitration or, in the alternative, to stay this action pending arbitration, as the Arbitration Agreement was expressly incorporated in the Debt Assumption Agreement, and the nature of the plaintiff's dispute relates to the services described in the Account Agreement and Disclosure Statement.

## QUESTIONS PRESENTED

(1) Whether the Court should dismiss this action and compel arbitration; and

(2) In the alternative, whether the Court should stay this action pending arbitration.

## ARGUMENT

**I.** **The Court Should Compel Arbitration Under § 4 of the FAA.**

Under the Federal Arbitration Act ("FAA"), any written agreement wherein the parties agree "to settle by arbitration a controversy thereafter . . . shall be valid, irrevocable and enforceable." 9 U.S.C. § 2. In determining whether to compel arbitration under the

FAA, 9 U.S.C. § 4, a court must determine "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Rice v. Credit One Fin.*, 2015 WL 4528933, at *1 (E.D.N.C. July 27, 2015) (citing *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002)). The district court must "engage[ ] in a limited review to ensure that the dispute is arbitrable-i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997) (citations and quotations omitted). "Once the court determines that a claim falls within the scope of an arbitration provision, the court has no authority to consider the merits of the claim, even if it appears to be frivolous, and must order the claim to arbitration." *Adkins v. Labor Ready, Inc.*, 185 F. Supp. 2d 628, 634 (S.D. W.Va. 2001), *aff'd* 303 F.3d 496 (4th Cir. 2002) (citation omitted).

In a case that originated in this Court, and on appeal from the Fourth Circuit, the United States Supreme Court recognized the FAA's liberal federal policy favoring arbitration agreements. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983). Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation. *Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001). Accordingly, "due regard must be given to the federal policy favoring arbitration, and *ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.*" *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989) (emphasis added). "Pursuant to that liberal policy, '*any*

*doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration*, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability.'" *O'Neil v. Hilton Head Hospital*, 115 F.3d 272, 273-74 (4th Cir. 1997) (quoting *Moses H. Cone*, 460 U.S. 1 at 24-25) (emphasis added). "[T]here is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

In keeping with the Congressionally-mandated policy favoring arbitration, the Fourth Circuit has set forth a very limited role for district courts to rule on motions to compel arbitration. Accordingly, in order to compel arbitration under § 4 of the FAA, a litigant must show:

> (1) [T]he existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of one party the [plaintiff] to arbitrate the dispute.

*Rota-McLarty v. Santander Consumer USA, Inc.,* 700 F.3d 690, 697 (4th Cir. 2012) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102, (4th Cir. 1991)); *see also Adkins*,

303 F.3d at 500-01. As provided below, the Arbitration Agreement at issue satisfies all four of the aforementioned elements, rendering arbitration appropriate in this matter.

**1. The Existence of a Dispute Between the Parties.**

With respect to the first element under § 4 of the FAA, the existence of a dispute between the parties in this matter should not be at issue, since the plaintiff filed a lawsuit against DAN on April 24, 2018, alleging claims arising from the debt assumption services agreed to between the plaintiff and DAN. (Compl., DE 4.) The underlying dispute reflected in the plaintiff's action is the subject of DAN's motion to dismiss and compel arbitration or, in the alternative, to stay proceeding pending arbitration.

**2. Written Agreement that Includes an Arbitration Agreement Purporting to Cover the Dispute.**

While federal law determines the arbitrability of issues, "[w]hether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Adkins*, 303 F.3d 496, 501 (citing *First Operations of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Courts "apply ordinary state law principles governing the formation of contracts, including principles concerning the 'validity, revocability, or enforceability of contracts generally.' [Courts] also apply the federal substantive law of arbitrability, which governs all arbitration agreements compassed by the FAA." *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 178-79 (4th Cir. 2013) (citations omitted).

"North Carolina has a strong public policy favoring arbitration and, *where there is any doubt concerning the existence of an arbitration agreement, it should be resolved in favor of arbitration.*" *Starnes v. Conduent Inc.*, No. 1:17CV495, 2018 WL 3466951, at *4

(M.D.N.C. July 18, 2018) (citing *Martin v. Vance*, 133 N.C. App. 116, 120, 514 S.E.2d 306, 309 (1999)) (emphasis added); *see also Howard v. Oakwood Homes Corp.,* 134 N.C. App. 116, 118-19, 516 S.E.2d 879, 881 (1999).

In determining whether the parties have a valid agreement to arbitrate, North Carolina courts apply general contract principles. *Routh v. Snap-On Tools Corp.*, 108 N.C. App. 268, 271, 423 S.E.2d 791, 794 (1992). The elements of a valid contract are simply "offer, acceptance and consideration." *Kinesis Advertising, Inc. v. Hill*, 187 N.C. App. 1, 11, 652 S.E.2d 284, 292 (2007). It is a fundamental principle of contract law that when a party affixes his signature to a contract, as a matter of law, he manifests his assent thereto. *Mosely v. WAM, Inc.,* 167 N.C. App. 594, 599, 606 S.E.2d 140, 144 (2004). As stated by the North Carolina Court of Appeals, "[p]ersons entering contracts . . . have a duty to read them and ordinarily are charged with knowledge of their contents." *Raper v. Oliver House, LLC*, 180 N.C. App. 414, 421, 637 S.E.2d 551, 555 (2006). "Long ago, our Supreme Court stated, 'the law will not relieve one who can read and write from liability upon a written contract, upon the ground that he did not understand the purport of the writing, or that he has made an improvident contract, when he could inform himself and has not done so.'" *Id.*; *see also Setzer v. Insurance Co.*, 257 N.C. 396, 401, 126 S.E.2d 135, 139 (1962) ("[W]here no trick or device had prevented a person from reading the paper which he has signed or has accepted as the contract prepared by the other party, his failure to read when he had the opportunity to do so will bar his right to reformation."); *Biesecker v. Biesecker*, 62 N.C. App. 282, 285, 302 S.E.2d 826, 828-29 (1983) ("[A] person signing a written

instrument is under a duty to read it for his own protection, and ordinarily is charged with knowledge of its contents. Nor may he predicate an action for fraud on his ignorance of the legal effect of it after.").

Additionally, under North Carolina contract law, even if a party does not sign the contract containing an arbitration clause, "traditional principles of state law allow [the arbitration provision] to be enforced by or against nonparties to the contract through . . . incorporation by reference . . . ." *Carter v. TD Ameritrade Holding Corp.*, 218 N.C. App. 222, 229, 721 S.E.2d 256, 261 (2012) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)); *see also Loney v. HSBC Card Servs.*, No. 7:14-CV-49-F, 2015 WL 3651058, at *1 (E.D.N.C. June 11, 2015) (listing incorporation by reference as an "exception to the general rule" that a party must agree to submit to arbitration).

In this matter, North Carolina's "strong public policy favoring arbitration," and command that "any doubt" regarding an arbitration agreement "should be resolved in favor of arbitration," dictate that the Arbitration Agreement at issue is valid and enforceable under state contract law. *See Starnes*, 2018 WL 3466951, at *4; *Howard*, 134 N.C. App. at 118-19, 516 S.E.2d at 881. The Arbitration Agreement was reached as part of an agreement executed by the plaintiff and DAN, wherein DAN agreed to provide debt assumption services in exchange for compensation, exhibiting offer, acceptance, and consideration. (Exs. A and B to the Declaration of Lee Sands.) Indeed, DAN required that

4852-4149-8992, v. 1

Case 1:18-cv-00644-WO-LPA   Document 9   Filed 09/10/18   Page 9 of 15

the plaintiff execute the Arbitration Agreement[3] in order to retain its services, and DAN would not have provided its services to the plaintiff had he not executed the Arbitration Agreement. (Declaration of Lee Sands ¶¶ 5-6.) The Arbitration Agreement was also expressly incorporated by reference in the contract executed by both the plaintiff and DAN, (Ex. A to the Declaration of Lee Sands at 3), which is permissible under state law for arbitration provisions. *Carter*, 218 N.C. App. at 229. Likewise, the terms accompanying the Arbitration Agreement are referenced in the contract executed by the plaintiff and DAN to determine the period of months that the services provided by DAN would proceed. (*Id.* at 3-4.) Finally, the Arbitration Agreement covers "*any dispute*" arising out of the underlying agreement "*or otherwise*" that is "*related*" to the services described therein. (Ex. B to the Declaration of Lee Sands, ¶ 6.) Since the terms reached between the plaintiff and DAN in the Debt Assumption Agreement are certainly "related" to the services outlined in the Account Agreement and Disclosure Statement, as those services are designed to facilitate the exchange of consideration between the plaintiff and DAN, and as the Account Agreement and Disclosure Statement dictates a material term of the debt assumption services provided by DAN (in particular, the period of months of the services), North Carolina contract law principles render enforceable the Arbitration Agreement at issue.

### 3. **Relationship to Interstate Commerce.**

---

[3] DAN required that the plaintiff execute the Arbitration Agreement by requiring that the plaintiff execute the Account Agreement and Disclosure Statement, which contains the Arbitration Agreement. (Declaration of Lee Sands ¶ 5-6.)

According to the Fourth Circuit, "the reach of the [FAA] is broad. It operates to enforce an arbitration provision included in 'a contract evidencing a transaction involving commerce' where 'commerce' means 'commerce among the several States.' The Supreme Court has interpreted this provision as exercising the full scope of Congress's commerce-clause power." *Rota-McLarty*, 700 F.3d at 697 (citations omitted). "While diversity of citizenship alone is not enough to classify a transaction, the FAA does not impose a burden upon the party invoking the FAA to put forth specific evidence proving the interstate nature of the transaction, nor does a court need to identify any specific effect upon interstate commerce, so long as in the aggregate the economic activity in question would represent a general practice subject to federal control." *Starnes*, 2018 WL 3466951, at *8 (citations and quotations omitted).

In this matter, the underlying contracted services at issue were between the plaintiff, a North Carolina resident, and DAN, a company organized and existing under the laws of Nevada with its principal place of business in Nevada. (Compl., DE 4, ¶ 2.) The agreement also relates to debt assumption services with respect to debts owed by the plaintiff to various banks and lenders throughout the United States. (Exs. A and B to the Declaration of Lee Sands.) Accordingly, it should be undisputed that the third requirement, mandating a relationship to interstate commerce, is satisfied.

    **4. Failure, Neglect, or Refusal to Arbitrate.**

With respect to the fourth and final element to compel arbitration under § 4 of the FAA, the plaintiff has failed, neglected, and/or refused to arbitrate. Evidence of the same

is sufficient when a plaintiff "has not engaged in the process for arbitration set forth in the agreement and has instead filed suit." *Starnes*, 2018 WL 3466951, at *8; *see also Surles v. Green Tree Servicing, LLC*, No. 5:14-CV-892-F, 2015 WL 5655827, at *3 (E.D.N.C. Sept. 24, 2015) (considering the plaintiff's "lack of arbitration" in evaluating this factor). Accordingly, this factor is satisfied.

## II. Dismissal of this Action is Appropriate.

While § 3 of the FAA grants courts the authority to stay judicial proceedings when an arbitration agreement governs the rights of the parties, the reference to a "stay" does not preclude dismissal of an action. *See* 9 U.S.C. § 3. When all of the issues raised in the district court must be submitted to arbitration, dismissal is proper. *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-710 (4th Cir. 2001) (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) ("Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose.") (quoting *Sea-Land Serv., Inc. v. Sea-Land of Puerto Rico, Inc.*, 636 F. Supp. 750, 757 (D.P.R. 1986)); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988)); *Starnes*, 2018 WL 3466951, at *9. Retaining jurisdiction serves no purpose where all claims will be determined in arbitration. *See Moses H. Cone*, 460 U.S. at 13.

In this matter, because all of the issues raised in the underlying action are encompassed by the Arbitration Agreement, DAN requests the dismissal of this action in

its entirety. However, should the Court elect to stay the proceeding pending the outcome of arbitration, DAN further requests that the case be administratively closed pending the outcome of arbitration. *See Helton v. Frye Regional Medical Center, Inc.*, 2006 WL 2038459 (W.D.N.C. 2006).

## CONCLUSION

DAN respectfully requests that the dismiss this action pursuant to the FAA and Rules 12(b)(1), 12(b)(3), and/or 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, stay the proceedings pending arbitration.

This the 10th day of September 2018.

        **CRANFILL SUMNER & HARTZOG LLP**

        BY: */s/ Michael B. Cohen*
        RICHARD T. BOYETTE
        N.C. Bar No. 7623
        MICHAEL B. COHEN
        N.C. Bar No. 50629
        *Attorneys for Defendant*
        Post Office Box 27808
        Raleigh, North Carolina 27611-7808
        Telephone (919) 828-5100
        Facsimile (919) 828-2277
        Email: rtb@cshlaw.com
              mcohen@cshlaw.com

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:18-cv-644

| | |
|---|---|
| MICHAEL HUNT. | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) **CERTIFICATE OF WORD COUNT** |
| | ) |
| DEBT ASSISTANCE NETWORK, LLC, | ) |
| | ) |
| Defendant. | ) |

I certify that this Memorandum complies with the word count limit set forth in Local Civil Rule 7.3(d). The number of words in this Memorandum, exclusive of the caption, signature lines, certificate of service, certificate of word count, and any cover page or index, does not exceed 6,250 words, according to the word count function of the word processing software used to prepare the Memorandum.

**CRANFILL SUMNER & HARTZOG LLP**

BY: */s/ Michael B. Cohen*
RICHARD T. BOYETTE
N.C. Bar No. 7623
MICHAEL B. COHEN
N.C. Bar No. 50629
*Attorneys for Defendant*
Post Office Box 27808
Raleigh, North Carolina 27611-7808
Telephone (919) 828-5100
Facsimile (919) 828-2277
Email: rtb@cshlaw.com
mcohen@cshlaw.com

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:18-cv-644

| | |
|---|---|
| MICHAEL HUNT. | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) **CERTIFICATE OF SERVICE** |
| | ) |
| DEBT ASSISTANCE NETWORK, LLC, | ) |
| | ) |
| Defendant. | ) |

This is to certify that on September 10, 2018, the undersigned has electronically filed a copy of the foregoing *MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO STAY PROCEEDING PENDING ARBITRATION* with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Paige C. Kurtz
Kurtz Law, PLLC
715 Kimbrough St.
Raleigh, NC 27608
*Attorney for Plaintiff*

**CRANFILL SUMNER & HARTZOG LLP**

BY: */s/ Michael B. Cohen*
RICHARD T. BOYETTE
N.C. Bar No. 7623
MICHAEL B. COHEN
N.C. Bar No. 50629
*Attorneys for Defendant*
Post Office Box 27808
Raleigh, North Carolina 27611-7808
Telephone (919) 828-5100
Facsimile (919) 828-2277
Email: rtb@cshlaw.com
mcohen@cshlaw.com