IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
MICHAEL HUNT,                    )
                                 )
         Plaintiff,              )
                                 )
    v.                           )      1:18CV644
                                 )
DEBT ASSISTANCE NETWORK, LLC,    )
                                 )
         Defendant.              )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This matter is before the court on Defendant Debt Assistance Network, LLC's ("DAN") Motion to Dismiss and Compel Arbitration or, in the Alternative, to Stay Proceeding pending Arbitration, (Doc. 8), pursuant to Rules 12(b)(1), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure and the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 et seq. Because there is an applicable arbitration clause present that covers Plaintiff's claims, Defendant's motion to compel arbitration will be granted and the case will be stayed pending arbitration.

### I. FACTUAL ALLEGATIONS

Plaintiff Michael Hunt entered into a contract (the "DAN Contract") with Defendant for Defendant's services in April 2017, (Complaint ("Compl.") (Doc. 4) ¶ 6); namely, negotiating with Plaintiff's creditors "for the purposes of consolidating

payments and hopefully reducing the payments to creditors over time." (Id. ¶ 11.) Pursuant to this agreement, Plaintiff made a down payment of $800 to Defendant, followed by monthly payments of $649.20. (Id. ¶ 12.) Plaintiff's contract with Defendant did not contain an arbitration provision.

Plaintiff contracted with a third-party payment processor, Secure Account Service, LLC ("SAS"), which would process the payments from Plaintiff to Defendant. (Id. ¶ 14.) Plaintiff's contract with SAS contained an explicit arbitration clause. (Motion to Dismiss and Compel Arbitration ("Def.'s Mot.") (Doc. 8) Ex. B, Account Agreement and Disclosure Statement ("ACH Agreement") (Doc. 8-3) ¶ 6.)

Defendant's contract with Plaintiff contained a clause stating that "[a]ll sums paid according to the terms shown on the ACH AGREEMENT, which is included as part of this AGREEMENT." (Def.'s Mot. (Doc. 8) Ex. A, Consumer Tender of Offer and Debt Assumption Agreement ("DAN Contract") (Doc. 8-2) ¶ C.) Defendant alleges that "ACH AGREEMENT" refers to the contract between Plaintiff and SAS, entitled "Account Agreement and Disclosure Statement" ("ACH Agreement"), (Def.'s Mot. (Doc. 8), Declaration of Lee Sands (Doc. 8-1) ¶ 7), and Plaintiff does not dispute this.

After Defendant allegedly allowed various of Plaintiff's accounts with creditors to go into default, Plaintiff terminated Defendant's services and SAS's services, (Paige Kurtz Affidavit ("Kurtz Aff.") (Doc. 13) at 7, 9)[1], and brought this case in Durham County Superior Court, (Petition for Removal ("Pet. For Removal") (Doc. 1) Ex. A, State Court Summons and Complaint (Doc. 1-1)), alleging claims of breach of contract, fraud, negligent misrepresentation, and unfair and deceptive trade practices on Defendant's part. Defendant properly removed the case to this court pursuant to 28 U.S.C. §§ 1332(a) and 1441(a) and (b). (Pet. for Removal (Doc. 1) at 5.) Defendant moved pursuant to Rules 12(b)(1), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure, and the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 et seq., for an order compelling Plaintiff to arbitrate all claims and to dismiss or, in the alternative, to stay proceedings, (Def.'s Mot. (Doc. 8) at 1). Defendant filed a memorandum in support of that motion, (Memorandum in Support of Defendant's Motion to Dismiss and Compel Arbitration ("Def.'s Br.") (Doc. 9)). Plaintiff responded to Defendant's motion, (Response in Opposition to Motion to

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

Dismiss and Compel Arbitration ("Pl.'s Resp.") (Doc. 14), to which Defendant replied, (Doc. 15).

## II. ANALYSIS

Defendant moves pursuant to the FAA and Federal Rules of Civil Procedure 12(b)(1), 12(b)(3) and 12(b)(6) for an order compelling Plaintiff to arbitrate his claims and either dismiss those claims or, in the alternative, stays this case pending completion of the arbitration. (Def.'s Mot. (Doc. 8) at 1).

### A. The Federal Arbitration Act

Federal policy strongly favors arbitration, and the FAA represents "a liberal federal policy favoring arbitration agreements" and applies "to any arbitration agreement within the coverage of the [FAA]." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Under the FAA, a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

#### 1. FAA Section 4 Framework

In order for federal district courts to compel parties to arbitrate under 9 U.S.C. § 4, four elements must be present:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and

>     (4) the failure, neglect or refusal of [a party] to
>     arbitrate the dispute.

Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 84 (4th Cir. 2016) (quoting Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 696 n.6 (4th Cir. 2012)). The parties must have entered into a valid agreement to arbitrate, and the dispute in question must fall within the scope of the arbitration agreement. Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 563 (4th Cir. 2015).

The parties agree that elements one, three, and four of the FAA Section 4 analysis are satisfied here. (Compare Pl.'s Resp. (Doc. 14) at 10, with Def.'s Br. (Doc. 9) at 7, 10–12.) There is clearly a dispute between the parties, the parties' transaction is related to interstate commerce (sending money to entities in different states)[2], and Plaintiff has refused to arbitrate. The only issue is whether there is a written arbitration agreement that covers the dispute.

### 2. **Existence of a Written Arbitration Agreement that Covers the Dispute**

At issue is whether there is a written agreement that includes an arbitration provision which purports to cover the

---

[2] Plaintiff is domiciled in North Carolina, and Defendant and SAS are corporate domiciliaries of Nevada and Arizona, respectively. (Compl. (Doc. 4) ¶¶ 1–2; Kurtz Aff. (Doc. 13) at 10–12.)

dispute. More specifically, Defendant argues that the DAN Contract expressly incorporated the arbitration clause in the ACH Agreement, and that the clause applies to Plaintiff's claims. (Def.'s Br. (Doc. 9) at 9.) For the reasons stated herein, the court finds that there is a valid arbitration agreement that covers this dispute.

Plaintiff does not deny that he agreed to the arbitration clause in the ACH Agreement with SAS. Plaintiff argues instead that the DAN Contract did not incorporate the ACH Agreement and its arbitration clause, and that even if the DAN Contract incorporated the ACH Agreement and the arbitration clause, the clause does not apply to Plaintiff's claims. (Pl.'s Resp. (Doc. 14) at 5-14.)

The FAA requires that "the party seeking a jury trial must make an unequivocal denial that an arbitration agreement exists – and must also . . . provide sufficient evidence in support of its claims such that a reasonable jury could return a favorable verdict under applicable law." Chorley Enters., Inc., 807 F.3d at 564. A party must therefore "show genuine issues of material fact regarding the existence of an agreement to arbitrate" in order to obtain a jury trial. Id.

The party seeking to compel arbitration must establish an agreement to arbitrate. See In re Mercury Constr. Corp., 656

F.2d 933, 939 (4th Cir. 1981), aff'd sub nom. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983).

The court must therefore determine whether the parties agreed to arbitrate, looking to relevant state contract law principles to make this determination. Hill v. Peoplesoft USA, Inc., 412 F.3d 540, 543 (4th Cir. 2005). Under North Carolina law, which neither party contests applies here, courts must "examine the language of the contract itself for indications of the parties' intent." State v. Philip Morris USA Inc., 359 N.C. 763, 773, 618 S.E.2d 219, 225 (2005) (Philip Morris I); see also Montessori Children's House of Durham v. Blizzard, 244 N.C. App. 633, 636, 781 S.E.2d 511, 514 (2016) ("When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court and the court cannot look beyond the terms of the contract to determine the intentions of the parties." (quoting Lynn v. Lynn, 202 N.C. App. 423, 431, 689 S.E.2d 198, 205 (2010))). Intent is derived "from the contract as a whole." Philip Morris I, 359 N.C. at 773, 618 S.E.2d at 225.

### a. The DAN Contract Incorporated the ACH Agreement by Reference

State law also dictates whether a contract has incorporated a different contract by reference. Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630-31 (2009). "To incorporate a

-7-

separate document by reference is to declare that the former
document shall be taken as part of the document in which the
declaration is made, as much as if it were set out at length
therein." Booker v. Everhart, 294 N.C. 146, 152, 240 S.E.2d 360,
363 (1978). Incorporating a separate document into another has
the effect of making the incorporating document subject to "any
and all possible conditions" set forth in the incorporated
document. Id. "Traditional principles of state law allow a
contract to be enforced by or against nonparties to the contract
through . . . incorporation by reference." Arthur Andersen, 556
U.S. at 631 (quotation marks omitted).

> As long as the contract makes clear reference to the
> document and describes it in such terms that its
> identity may be ascertained beyond doubt, the parties
> to a contract may incorporate contractual terms by
> reference to a separate, noncontemporaneous document,
> including a separate agreement to which they are not
> parties, and including a separate document which is
> unsigned.

11 Richard A. Lord, Williston on Contracts § 30:25 (4th ed.
2011).

Plaintiff argues that the arbitration clause in the ACH
Agreement was not incorporated into the DAN Contract, relying on
the language of the DAN Contract for support. The language at
issue states "All sums paid according to the terms shown in the
ACH AGREEMENT, which is included as part of this AGREEMENT."
(DAN Contract (Doc. 8-2) at 2.) Plaintiff argues that this

language "refers only to the 'sums paid' and refers to a method by which Defendant will collect fees that it is owed by Plaintiff." (Pl.'s Resp. (Doc. 14) at 5.) It is Plaintiff's position that the juxtaposition of the incorporation statement with language about fees, in addition to the fact that this incorporation statement comes after two other sentences concerning fees Plaintiff would pay to Defendant, makes clear that "what is incorporated is the fact that the sums will be paid by ACH Agreement and not as direct payments to Defendant." (Id.)

"Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." Philip Morris, 363 N.C. 623, 631, 685 S.E.2d 85, 90 (2009) (Philip Morris II) (internal citation and quotation omitted). "It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument." Carolina Power & Light Co. v. Bowman, 229 N.C. 682, 693-94, 51 S.E.2d 191, 199 (1949). Terms in a contract are to be "interpreted according to their usual, ordinary, and commonly accepted meaning." Anderson v. Allstate Ins. Co., 266 N.C. 309, 312, 145 S.E.2d 845, 848 (1966) (quotation marks omitted).

The court finds it readily discernable that the phrase "which is" refers to the ACH Agreement.³ Because the phrase "which is included as part of this agreement" refers to the ACH Agreement, this court finds that the ACH Agreement is expressly incorporated by reference.

The fact that the incorporating statement comes during a set of sentences dealing with payment issues is not inconsistent with this conclusion. Indeed, were Plaintiff's contention that arbitration only applied to payment issues correct, it seems there would be some language limiting the incorporation of the document. Simply relying on context to limit the incorporation of the arbitration agreement would appear to be an unusual method given the grammatical friction discussed above.

---

³ Plaintiff's reading, however creative it may be, runs afoul of more basic, straightforward grammatical rules. Breaking down the clause, "All sums paid according to the terms shown in the ACH AGREEMENT, which is included as part of this AGREEMENT," it is clear, for two reasons, that "which is" refers to the ACH Agreement. First, if "which is" was referring to "all sums" or "the terms," the phrasing would be "which are," because "sums" and "terms" are plurals. Because there is only one singular noun preceding "which is," it must be the ACH agreement. Second, "which" is a relative pronoun. A relative pronoun's antecedent (generally a noun), "should immediately precede the pronoun." The Chicago Manual of Style, § 5.59 (17th ed. 2017). In this case, the grammatically correct reading of "which" points to the immediately preceding noun, "ACH AGREEMENT." Given that "is" instead of "are" is used, and "ACH AGREEMENT" immediately precedes the relative pronoun "which is," the court thus finds it difficult to come to any other conclusion than to find that "which is" refers to the ACH Agreement.

After finding that the ACH Agreement is incorporated into the DAN Contract, the next step is to determine if the entire ACH Agreement is incorporated. As stated in Booker, when a document is incorporated by reference, it is "much as if it were set out at length therein." 294 N.C. at 152, 240 S.E.2d at 363 (emphasis added). The DAN Contract clearly and unambiguously states that the ACH Agreement "is included as part of this AGREEMENT." (DAN Contract (Doc. 8-2) at 2.) In the face of unambiguous words that put no limit on the parts of the ACH Agreement that it incorporates, the court must find that the DAN Contract incorporated the entire document, arbitration clause and all.

Plaintiff's arguments against finding incorporation by reference are incorrect and without merit. Plaintiff contends that, because "[a]dditional terms within the SAS contract point to a completely separate obligation on the part of Plaintiff," the ACH Agreement cannot be incorporated. (Pl.'s Resp. (Doc. 14) at 6.) This argument cannot stand, as North Carolina law does not require incorporated documents to govern the same underlying obligations. See Montessori Children's House, 244 N.C. App. at 638 & n.1, 781 S.E.2d at 515 & n.1 (discussing a contract for school tuition which incorporated a "Family Handbook" by

reference which "appears to impose an obligation on . . . parents and students . . . .").

Further, Plaintiff argues that the ACH Agreement contains terms which conflict with the express terms of the DAN Contract, and that the ACH Agreement does not incorporate its terms into the DAN Contract, or incorporate the DAN Contract terms into the ACH Agreement. (Pl.'s Resp. (Doc. 14) at 7.) These arguments are similarly unpersuasive. North Carolina contract law does not require a document incorporating another document to not conflict with the incorporated document, see, e.g., Wood-Hopkins Contracting Co. v. N.C. State Ports Auth., 284 N.C. 732, 738, 202 S.E.2d 473, 476 (1974) ("[W]hen general terms and specific statements are included in the same contract and there is a conflict, the general terms should give way to the specifics."), nor does North Carolina contract law require that the incorporated document incorporate the incorporating document, see Schenkel & Schultz, Inc. v. Hermon F. Fox & Assocs., P.C., 362 N.C. 269, 273–75, 658 S.E.2d 918, 921–22 (2008) (taking as an unproblematic fact that a construction subcontract incorporated by reference the terms of the main construction contract, without evidence that the main construction contract incorporated the subcontract); see also *Incorporation by Reference*, Black's Law Dictionary (11th ed. 2019) (defining

-12-

incorporation by reference as "[a] method of making a secondary document part of a primary document by including in the primary document a statement that the secondary document should be treated as if it were contained within the primary one" and not mentioning a requirement of mutual incorporation).

        b.    **Plaintiff's Claims Fall Within the Scope of the Arbitration Provision**

Plaintiff argues that even if this court finds that the ACH Agreement is fully incorporated into the DAN Contract, that the arbitration provision does not apply to Plaintiff's claims. (Pl.'s Resp. (Doc. 14) at 9.) This court disagrees.[4]

---

[4] The issue of whether the DAN Contract incorporated the ACH Agreement by reference is a matter of law for this court to decide. Defense counsel's emailed statements to Plaintiff's counsel that the two documents are separate contracts, (Kurtz Aff. (Doc. 13) at 4, 6), are neither persuasive nor binding under North Carolina law. Parties may use parol evidence to explain or clarify an ambiguous term or clause in a contract. Vestal v. Vestal, 49 N.C. App. 263, 266–67, 271 S.E.2d 306, 309 (1980). Plaintiff has not, however, forecast evidence sufficient to overcome the presumption in favor of arbitration. Further, based upon the pleadings, this court is satisfied that there is no challenge to the formation of the contract requiring parol evidence. Finally, Defendant's counsel's statements would not qualify as parol evidence even if parties were to challenge the contract formation, because the statements were not made prior to or contemporaneous with the contract formation in April 2017, (DAN Contract (Doc. 8-2) at 4); they were made in March 2018, (Kurtz Aff. (Doc. 13) at 4, 6). Parol evidence must be made prior to or contemporaneous with contract formation. Borden, Inc. v. Brower, 284 N.C. 54, 61–62, 199 S.E.2d 414, 420 (1973). While the parties may not have understood the full legal effect of the contract's terms, that issue should have been considered and addressed prior to signing the contract, not after.

The arbitration provision here states that "Client agrees that any dispute or claim arising out of this Agreement or otherwise, related to SAS's services to Client, shall be resolved through binding arbitration." (ACH Agreement (Doc. 8-3) at 1.) Plaintiff claims that he has made "no argument regarding how SAS processed those payments and presumably forwarded monies to Defendant at this time." (Pl.'s Resp. (Doc. 14) at 12.) Instead, Plaintiff's claims "relate solely to Defendant's breach of contract . . . and the failure to refund payments which Defendant received[.]" (Id. at 13.)

The Fourth Circuit has given broad meaning to clauses providing for arbitration "arising out of and relating to" a contract. In J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir. 1988), the Fourth Circuit held that an arbitration clause providing that "all disputes arising in connection with the present contract" must be construed broadly, such that the clause "does not limit arbitration to the literal interpretation or performance of the contract," and that "[i]t embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." See also Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir. 1996) ("[T]he district court erred in concluding that

[plaintiff's] claims did not fall within the scope of the arbitration agreement because they did not turn upon the interpretation of the terms of the . . . agreement.").

This standard is applicable here. Plaintiff would have this court "limit arbitration to the literal interpretation or performance of the contract," J.J. Ryan & Sons, 863 F.2d at 321, by arguing that the ACH Agreement does not incorporate the terms of the DAN Contract, that the ACH Agreement is a separate contract from the DAN Contract, and that the arbitration clause must be "related to SAS's services" to Plaintiff. (Pl.'s Resp. (Doc. 14) at 13–14.) Even limiting the present arbitration clause to its literal interpretation, the clause would likely encompass Plaintiff's claims. Plaintiff's claims all relate to payments that were made to Defendant; payments that could not have been made possible without the ACH Agreement.

This court, however, finds the arbitration agreement ambiguous with regards to whether it covers Plaintiff's claims. There seems to be ambiguity in the drafting of the arbitration clause. It is unclear to the court whether "any dispute arising out of this Agreement or otherwise, related to SAS's services to client, shall be resolved through binding arbitration," is broad enough to cover Plaintiff's claims brought against a separate company and under a separate contract.

Ambiguities do not save Plaintiff, however. Where there is a validly formed and enforceable agreement to arbitrate that contains an ambiguity, the court must apply the federal presumption of arbitrability. Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299–304 (2010); see also Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989) (noting the "heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration"). Indeed, as the Fourth Circuit notes,

> [w]hen interpreting a contract containing an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

Peabody Holding Co. v. United Mine Workers of Am., Int'l Union, 665 F.3d 96, 104 (4th Cir. 2012) (internal quotation marks and citation omitted). Here, the arbitration clause is entirely "susceptible of an interpretation that covers the asserted dispute[s]," id., because but for the ACH Agreement, Plaintiff could not have successfully contracted with DAN, nor could have successfully made payments to DAN. It is also possible that the clause may not cover Plaintiff's claim. The "heavy presumption of arbitrability" in the face of this ambiguity nevertheless

weighs on this court, and therefore this court must "decide the question in favor of arbitration." Defendant's motion to compel arbitration will be granted.

### B. <u>Stay Pending Arbitration</u>

Defendant asks that this court dismiss the action because all issues should be referred to arbitration, or in the alternative, that this court stay proceedings pending arbitration. While this court has the authority to dismiss the action, see Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 376 (4th Cir. 2012), a stay is consistent with the provisions of the FAA, which provides that the court shall stay an action until the arbitration is complete. 9 U.S.C. § 3. This court will therefore stay this action pending resolution of the arbitration.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, this court finds that Defendant's Motion to Dismiss and Compel Arbitration should be granted in part and denied in part.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Arbitration and Stay Proceedings or, in the Alternative, to Stay Proceeding pending Arbitration, (Doc. 8), is **GRANTED IN PART AND DENIED IN PART** in that Defendant's motion to dismiss is **DENIED** and Defendant's motion to stay this action is **GRANTED.**

**IT IS FURTHER ORDERED** that this action is **STAYED** until arbitration has been had in accordance with the terms of the parties' arbitration agreement.

The Clerk of the Court is directed to administratively close the file. The parties shall file a joint report of arbitration every ninety (90) days. Failure to file such reports may result in dismissal of the action.

A Judgment in accordance with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 24th day of September, 2019.

/s/ William L. Osteen, Jr.
United States District Judge